**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SUDARSHAN NELATURY, | ) | Civil Action No.   1:21-cv-279 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE PENNSYLVANIA STATE | ) | |
| UNIVERSITY and RALPH FORD, | ) | FILED ELECTRONICALLY |
| | ) | |
| Defendants | ) | JURY TRIAL DEMANDED |

**COMPLAINT IN CIVIL ACTION**

Plaintiff Sudarshan Nelatury ("Plaintiff" or "Dr. Nelatury"), by and through undersigned counsel, files this Complaint in Civil Action stating as follows:

## I. PARTIES

1.      Dr. Nelatury is an individual residing in Erie County, Pennsylvania.

2.      Defendant Pennsylvania State University ("Penn State") is a state-related institution of post-secondary education that maintains a campus located at 4701 College Drive, Erie, PA 16563.

3.      Defendant Ralph Ford ("Dr. Ford") is an individual who maintains a place of business at 4701 College Drive, Erie, PA 16563.

## II. JURISDICTION

4.      The jurisdiction of this Court over the matters set forth in this Complaint is set forth at 28 U.S.C. § 1331, 28 U.S.C. § 1367, and at 42 U.S.C. § 2000e-5(f)(3).

## III. VENUE

5.      The matters complained of in this Complaint occurred in Erie County, Pennsylvania, in the Western District of Pennsylvania; therefore, venue is appropriate in this Court.

## IV.  ADMINISTRATIVE EXHAUSTION

6.     On or about November 13, 2020, Dr. Nelatury filed a charge alleging discrimination on the basis of race, sex, national origin, and age against Penn State and Dr. Ford with the U.S. Equal Employment Opportunity Commission ("EEOC").

7.     Dr. Nelatury cross-filed the aforementioned charge (which was docketed by the EEOC at 533-2021-00311) with the Pennsylvania Human Relations Commission ("PHRC").

8.     Subsequently, on or about April 19, 2021, Dr. Nelatury filed an additional charge with the EEOC alleging retaliation; this charge was docketed at 533-2021-01159.

9.     Dr. Nelatury also cross-filed the aforementioned charge with the PHRC.

10.     On or about July 20, 2021, undersigned counsel requested the issuance of "Right to Sue" notices as to both of the aforementioned charges.

11.     On or about July 21, 2021, the EEOC issued a Right to Sue notice as to the charge docketed at 533-2021-00311.

12.     On or about August 12, 2021, the EEOC issued a Right to Sue Notice as to the charge docketed at 533-2021-01159.

13.     Dr. Nelatury's federal claims are now ripe for adjudication.

14.     As soon as any pending administrative complaints filed with the PHRC are exhausted Dr. Nelatury will file an amended complaint seeking to plead additional claims under the Pennsylvania Human Relations Act.

## V.  FACTS

15.     Dr. Nelatury is currently employed by the Behrend College of Penn State ("PSU–Behrend" or "Penn State–Behrend") as an Associate Professor in the Department of

Electrical and Computer Engineering.

16.     PSU–Behrend is a component of Penn State.

17.     PSU–Behrend is primarily an undergraduate unit, unlike the main Penn State campus at University Park.

18.     Faculty at PSU–Behrend lack the aid of graduate assistants and, as such, cannot be expected to produce research at the same levels as their colleagues at University Park.

19.     Dr. Nelatury is a non-Caucasian (white) individual who is of Indian and South Asian national origin.

20.     Dr. Nelatury has taught at PSU–Behrend since 2003.

21.     Dr. Nelatury was granted an O-1 visa in 2003; these are normally issued only to individuals with "extraordinary abilities or achievement."

22.     Dr. Nelatury later received residency per an EB-1 employment-based immigration classification; again, this status is normally reserved for high-achieving individuals.

23.     Dr. Ford is currently the Dean/Chancellor of Penn State–Behrend.

24.     Tim Kurzweg ("Dr. Kurzweg") is the School Director of the Penn State–Behrend School of Engineering.

25.     During the time relevant to this complaint Tom Hemminger ("Dr. Hemminger") was the Chair of Department of Electrical and Computer Engineering; he has since been replaced by Dr. Fethi Belkhouche.

26.     Dr. Nelatury's primary areas of research focus are electrical engineering, electromagnetics, signal processing, engineering education, and allied fields.

27.     Dr. Nelatury has authored eight books, four book chapters, 23 book sections, and 37

3

peer-reviewed journal papers.

28.     Dr. Nelatury has also participated and published in 34 conference proceedings.

29.     Over the past eighteen years Dr. Nelatury has been the faculty member with the highest number of publications in traditional peer-reviewed journals.

30.     Dr. Nelatury's books have been published by, *inter alia*, CRC Press and the Oxford University Press; these publications have been used throughout the world and have received high accolades.

31.     In addition, Dr. Nelatury has coauthored 48 papers in open-access journals.

32.     Dr. Nelatury was awarded tenure at PSU–Behrend in 2009.

33.     For seventeen years Dr. Nelatury has received an "excellent" rating in terms of research, and has been the recipient of "Outstanding Research Award" and "Council of Fellows Research Award."

34.     Dr. Nelatury's work has been highly rated by platforms such as Research Gate and Google Scholar.

35.     Dr. Nelatury is a senior member of the Institute of Electrical and Electronics Engineers ("IEEE").

36.     Dr. Nelatury has been recognized within the wider scientific community; for instance he developed a uniqueness theorem and proposed a technique for estimating the parameters of induction motors (later named the "Nelatury Method") that was published in *IEEE Transactions on Energy Conversion*.

37.     One of Dr. Nelatury's papers in *Digital Signal Processing* was ranked 2nd among top 25 papers and another in *Electromagnetics* was ranked third among the top ten.

4

38.     Dr. Nelatury also signed a contract as a contributor for a work entitled *Elements of Electromagnetics, Seventh Edition* by Matthew Saidku that was published by Oxford University Press; Dr. Nelatury presented his contract to Dr. Kurzweg when applying for promotion.

39.     Dr. Nelatury has also been rated as "excellent" in the area of teaching from his peers.

40.     Dr. Nelatury has also received consistently high ratings for teaching from his students.

41.     In addition, Dr. Nelatury served in the PSU–Behrend Faculty Senate.

42.     In 2015, Dr. Nelatury met with Dr. Ford regarding promotion to the rank of full Professor.

43.     Dr. Ford said that the promotion process would start with the school ad hoc committee.

44.     Dr. Nelatury then started the promotion process.

45.     As Dr. Nelatury started to take the initial steps for promotion, between 2015 and 2017, Russ Warley ("Dr. Warley"), who succeeded Dr. Ford as director of the Penn State–Behrend School of Engineering, continually discouraged Dr. Nelatury from applying for promotion on the basis that Dr. Ford would not approve the application.

46.     During the 2018-19 academic year, Dr. Nelatury applied for promotion from the rank of Associate Professor to the rank of full Professor.

47.     In conformity with University procedures Dr. Nelatury compiled a dossier of his academic work to be reviewed by the University promotions committee.

48.     Dr. Nelatury consented to having his dossier reviewed by an ad hoc committee of three faculty members–Jeff Pinto, Dr. Hemminger, and Diane Parente.

49.     However, Dr. Nelatury's dossier was reviewed by three other faculty members whose

academic backgrounds were not in electrical engineering; one reviewer was from the Biology Department, another was from the Business Department, and the third was from outside of Penn State–Behrend.

50.     At this time Dr. Nelatury met with Ed Evans ("Mr. Evans"), then the acting director of the Penn State–Behrend School of Engineering, who discouraged Dr. Nelatury from applying, implying that Dr. Ford would not approve of his application.

51.     After Mr. Evans stepped down, Dr. Kurzweg also discouraged Dr. Nelatury from applying, again suggesting/implying that Dr. Ford would not approve.

52.     Moreover in January 2019, Dr. Kurzweg did not allow Dr. Nelatury to supplement his dossier with new information about his Fall 2018 SRTEs (student rating of teaching effectiveness) and letters that commended his work; the University Senate later would repudiate Dr. Kurzweg's failure to allow Dr. Nelatury to supplement his record.

53.     The courses that Dr. Nelatury teaches are considered the most difficult in the Department.

54.     His Fall 2018 scores in the two hardest courses, Electromagnetic Fields and Waves and Communication Systems, were 6.63/7.0 and 6.0/7.0.

55.     Around this time Dr. Nelatury developed stress-related physiological ailments which required medical attention.

56.     Ultimately, in February 2019, Dr. Ford, the Chancellor, recommended against promoting Dr. Nelatury to the rank of full professor.

57.     Dr. Ford has had a history of taking adverse action against faculty who are not of U.S. national origin.

6

58.     For instance, Dr. Ford contributed towards removing a faculty member of non-U.S. national origin from the tenure track in May 2018.

59.     The aforementioned faculty member, who is a non-Caucasian individual of Egyptian national origin, was a professor of computer engineering at Penn State–Behrend.

60.     The aforementioned faculty member had accused a number of students enrolled in his course of plagiarism.

61.     Dr. Ford's son was among the students whom the faculty member had accused of plagiarism.

62.     Dr. Ford's conduct towards that faculty member suggests a pattern of discriminatory conduct towards faculty who are not Caucasian (white) or who are not of U.S. national origin.

63.     Dr. Nelatury is a person of dark skin color.

64.     In Spring 2019, Dr. Ford recommended the promotion of a much younger non-Indian female faculty member even though the college ad hoc committee recommended that Dr. Nelatury be promoted over her.

65.     Ultimately, in January 2020, Dr. Nelatury filed a petition with the PSU Senate Committee on Faculty Rights and Responsibilities ("FRRC").

66.     In his petition, Dr. Nelatury noted that his publication record was superior to that of the Chancellor of PSU–Behrend, Dr. Ford, as well as the directors of the PSU–Behrend School of Engineering and the chair of the Engineering Department; he did so because the tenure and promotion policy of Penn State clearly directs that the criterion of "relative standing" must be followed.

67.     In his petition, Dr. Nelatury alleged procedural unfairness in terms of a) the

composition of the school ad hoc review committee made up of faculty outside of electrical engineering and b) Dr. Ford's failure to allow Dr. Nelatury to supplement his dossier.

68.    Shortly after the submission of the aforementioned petition, Dr. Nelatury was informed via letter from Greg Ziegler, FRRC chair, that the FRRC would review Dr. Nelatury's procedural claims, while his discrimination claims would be reviewed by the University Affirmative Action office.

69.    In June 2020, the FRRC found in favor of Dr. Nelatury with respect to the composition of his dossier and ordered that he be allowed to supplement his dossier.

70.    The FRRC found that while the due date to add material to the promotion dossier was in February 2019, Dr. Kurzweg prevented Dr. Nelatury from doing so in January 2019.

71.    The FRRC further ruled that Dr. Nelatury be allowed to resubmit his application for promotion during the 2021-22 academic year.

72.    In September 2020, the FRRC found while there was no procedural error with respect to the formation of the ad hoc committee, it did find that Dr. Nelatury should have been permitted to supplement his dossier.

73.    The Vice Provost of Faculty Affairs, Dr. Bieschke, ordered that Dr. Nelatury's dossier be submitted for reevaluation and that his review be carried through "all university levels,"  which was preemptively blocked by Dr. Ford.

74.    Although he had demonstrated that he was qualified, Dr. Nelatury has not been promoted to the rank of full Professor.

75.    Dr. Nelatury's complaints regarding discrimination have not been adequately addressed.

76.     Although he had been recommended for promotion by the college ad hoc review committee, Dr. Nelatury has not yet been promoted.

77.     A substantially younger female professor was promoted notwithstanding the fact that she was not recommended for promotion unanimously by the College Committee.

78.     The denial of promotion, the procedural irregularities with respect to his initial application for promotion, the ongoing review of Dr. Nelatury's dossier, and the failure to address his concerns regarding discrimination all constitute adverse employment actions.

79.     Dr. Ford ignored the primary criterion for promotion, which is "relative merit."

80.     Dr. Ford contributed to the decision not to promote Dr. Nelatury.

81.     Dr. Nelatury successfully grieved the adverse decision by Dr. Ford on the grounds of procedural unfairness, and was allowed to reapply for promotion during the 2020-21 academic year.

82.     The circumstances surrounding the aforementioned adverse employment actions suggest that Dr. Nelatury was treated less favorably than others who were not of Indian descent and/or who were not male and/or who were substantially younger.

83.     Dr. Nelatury was subjected to adverse treatment on the basis of his race, national origin, age, and gender.

84.     The prior review was insulting, destructive of time and resources, discriminatory, and injurious to Dr. Nelatury's health.

85.     During the course of the promotion process, Dr. Nelatury has faced continual rejection, prejudice, and procedural errors in dealing with his dossier.

86.     Throughout this process, Dr. Nelatury has undergone extreme stress resulting in

invasive heart treatment; he has also been treated for depression.

87.     The new review involved many of the same actors including Dr. Ford and Dr. Kurzweg.

88.     Despite his high performance, Dr. Nelatury has been subjected to a hostile work environment.

89.     White and/or non-Indian faculty have been promoted on the basis of only a few open-access papers.

90.     Moreover, Dr. Ford ignored Dr. Nelatury's four-year service on the University Faculty Senate and on the Promotion and Tenure Committee.

91.     Even though Penn State SRTE policy maintains that the SRTEs must be viewed along with peer-reviews of faculty members for promotion and tenure; in the present case, both Dr. Kurzweg and Dr. Ford did not consider Dr. Nelatury's peer-review report.

92.     Numerous times Dr. Nelatury received SRTEs greater than 6.0 on a scale of 7.0.  For instance, in Fall 2019 his scores in three courses were 6.62, 6.54, 6.4 out of 7.   Rarely he received lower scores in low-level courses, but faulting teaching based on these outliers to the total exclusion of his exemplary high numbers shows pretext.

93.     Dr.  Nelatury received "Excellent" in his peer-review report authored by faculty in electrical and computer engineering that was given based on actual classroom visits.

94.     Dr. Warley, the former director of school of engineering, commented that Dr. Nelatury's research had been prolific and he asked him to "cut-back" on the publications.

95.     Dr. Warley had prepared a letter praising Dr. Nelatury's scholarly output, but Dr. Ford blocked Dr. Nelatury from including this document in his dossier.

96.     Dr. Nelatury was unfairly penalized for his publication in "open source" formats, and Dr. Ford unfairly disregarded Dr. Nelatury's output in traditional journals.

97.     However, in April 2015, the Penn State Senate made a resolution that all open access publications should be considered as scholarly contributions; this resolution was subsequently endorsed by the University administration.

98.     The University's resolution in favor of open access publication (which was endorsed by the University president, Eric Baron) prompted Dr. Nelatury to publish in open access fora.

99.     Open access scholarship is peer reviewed scholarship that is made available free-of-charge by academic publishers on the internet.

100.    Although Dr. Nelatury had numerous high-quality papers in reputed journals and books to his credit (including papers published on traditional platforms, about 106 traditional publications out of 154 total publications), Drs. Kurzweg and Ford focused on the remaining 48 open source publications which they, contrary to Penn State policy, discounted as scholarly publications.

101.    Official policy at Penn State supports publication in open source journals, and the Penn State Office of the Executive Vice President and Provost has committed to funding $45,000 in grants to support open access journals.

102.    Rather than perform a summative, unbiased evaluation of Dr. Nelatury's work, Drs. Ford and Kurzweg cherry-picked certain publication so as to reach a pre-determined conclusion.

103.    Specifically, in his February 2021 evaluation of Dr. Nelatury, Dr. Kurzweg unfairly claimed that the open access journals that Dr. Nelatury and his collaborators published in "advertise[d] a quick turn around from submission and publication."

104.    In November 2020, Dr. Nelatury filed an administrative charge alleging, *inter alia*,

discrimination on the basis of race, national origin, and gender with the EEOC.

105.    Dr. Ford was named as a respondent to the aforementioned charge.

106.    The aforementioned actions both constitute activities protected by Title VII.

107.    Dr. Nelatury reapplied for promotion during the 2020-21 academic year, and was recommended for promotion by the college-wide ad hoc committee.

108.    However, Dr. Ford did not recommend Dr. Nelatury for promotion.

109.    Dr. Ford also did not forward Dr. Nelatury's application to the University Promotion and Tenure Review Committee ("University-wide Committee"), thereby attempting to block Dr. Nelatury's progress towards promotion.

110.    Vice-Provost Bieschke stated that the review should go through all university levels, but Dr. Ford preemptively stopped the same.

111.    Moreover, University regulations require Dr. Ford to consult with the college-wide ad hoc committee to reconcile their divergent evaluations of Dr. Nelatury.

112.    While Dr. Ford wrote that he met with the college-wide ad hoc committee on February 22, 2021 to discuss the divergent evaluations, he did not mention what was discussed during this meeting.

113.    Dr. Ford's evaluations of Dr. Nelatury's scholarship focused on his work on open access and largely ignored his work is traditional journals.

114.    Dr. Ford completely discounted Dr. Nelatury's work in writing textbooks published by Oxford University Press and CRC Press.

115.    Dr. Ford also ignored the open access policy that was passed by the University Senate and ratified by the University President; Dr. Nelatury's input should have been considered in light

of this policy which also is conducive to the rapid development of scientific and technical fields.

116.    Dr. Nelatury has been denied promotion.

117.    The failure to grant promotion to Dr. Nelatury constitutes an adverse employment action.

118.    Dr. Ford, a full Professor, is a white native born American with lesser credentials than Dr. Nelatury and has discriminated against Dr. Nelatury in the past.

119.    Dr. Ford has blocked Dr. Nelatury's promotion to full Professor.

120.    In addition, Dr. Ford's review letters, his failure to recommend Dr. Nelatury for promotion, and the failure of the University-wide Committee to review Dr. Nelatury's application for promotion all constitute adverse employment actions.

121.    Dr. Nelatury has over 38 years of teaching experience and has been recognized for his accomplishments.

122.    The denial of promotion has had a significant negative impact on Dr. Nelatury's health and well-being.

123.    Significantly younger faculty, and/or faculty who were white, non-Indian, and/or of U.S. national origin, were not subject to similar treatment.

124.    Moreover, by failing to promote and/or recommend for promotion Dr. Nelatury, Penn State and Dr. Ford have retaliated against Dr. Nelatury for filing both an internal grievance and an administrative complaint against Dr. Ford, as well as his initial Title VII complaint.

125.    By retaliating against Dr. Nelatury for filing internal and external complaints, Penn State and Dr. Ford have retaliated against him for engaging in actions protected by Title VII.

126.    Dr. Nelatury was subjected to adverse employment action on account of his age, race,

national origin, and gender.

127.    Dr. Nelatury was subjected to adverse employment action because he had engaged in activities protected by Title VII.

128.    Penn State has created an ethnic and racial glass ceiling that Dr. Nelatury cannot penetrate despite his excellence.

129.    Dr. Nelatury demands a jury trial.

## VI.  COUNTS

COUNT I: VIOLATION OF FREE SPEECH (RETALIATION)
VIOLATIONS OF 42 U.S.C. § 1983
Plaintiff Sudarshan Nelatury v. All Defendants

130.    The preceding paragraphs are incorporated as if set forth at length herein.

131.    Penn State is a state actor that acted under the color of law to deny Dr. Nelatury his protected rights to free speech.

132.     At all relevant times Dr. Ford acted under color of state law, inasmuch as his acting as set forth at length above constitute misuse of power possessed solely by virtue of state law and made possible only because Dr. Ford is and was clothed with the authority of state law.

133.    Academic and/or scholarly speech is protected by the First Amendment.

134.    Spurred on by trends in favor of massive open access to research and scholarship and open online educational platforms (which includes Penn State's endorsement of open access publication), Dr. Nelatury engaged in open access scholarship.

135.    Even though University policy specifically indicates that "open access" work must be afforded the same status as peer-reviewed works that are published in the traditional forum, Dr. Kurzweg and Dr. Ford unilaterally discounted Dr. Nelatury's open access output, implying that open

14

access publications would publish any author.

136.    In so doing Drs. Kurzweg and Ford ignored Dr. Nelatury's impressive record of 106 traditional format peer-reviewed publications.

137.    Dr. Nelatury's open access work was not afforded the value that it merited in light of global trends in favor of open access scholarship.

138.    The failure to treat open access work the same as traditionally-published work is an unlawful regulation of speech.

139.    The summary failure to consider Dr. Nelatury's publication record of 106 traditional format publications also constitutes an illegal regulation of speech.

140.    Dr. Nelatury was denied promotion because he had published open access publications.

141.    The denial of Dr. Nelatury's promotion constitutes illegal discrimination and regulation of his publication record.

142.    Dr. Nelatury seeks all remedies and damages permitted under 42 U.S.C. § 1983, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, attorney's fees, costs, and pre-judgment and post-judgment interest.

COUNT II: DISCRIMINATION ON THE BASIS OF RACE/NATIONAL ORIGIN
VIOLATION OF 42 U.S.C. § 1981
Plaintiff Sudarshan Nelatury v. All Defendants

143.    The preceding paragraphs are incorporated as if set forth at length herein.

144.    42 U.S.C. § 1981 ensures the equal right of all individuals to make and enforce contracts regardless of race.

145.    Dr. Nelatury is of Indian descent and national origin, and as such is a member of a

15

class protected by 42 U.S.C. § 1981.

146.    Dr. Nelatury is an individual of Indian national origin, a person of color, and of non-U.S. national origin.

147.    Dr. Nelatury was assigned to immigration classifications(s) reserved for highly skilled individuals.

148.    Dr. Nelatury was qualified for promotion at Penn State.

149.    Dr. Nelatury was subjected to an adverse employment action in that his promotion application was not processed in a manner consistent with University regulations and in that his promotion dossier was not evaluated fairly.

150.    Dr. Nelatury was subjected to adverse employment action in that he was not promoted in academic rank from Associate Professor to full Professor.

151.    Dr. Nelatury's publication record is stronger than that of white faculty members of U.S. national origin who were promoted in the past.

152.    A non-Indian faculty member was promoted by Dr. Ford ahead of Dr. Nelatury, notwithstanding the fact that she had a lesser publication record and the fact that the college-level promotion committee advised that Dr. Nelatury be promoted ahead of her.

153.    The Electrical Engineering Program at Penn State–Behrend only has three full Professors, all of whom are white males; in contrast, the electrical engineering department at Penn State's campus in Harrisburg has six full professors, two Associate Professors, and is more diverse.

154.    Two of the three members of the Electrical Engineering Program faculty hold administrative positions and do not teach; therefore, there is only one full Professor, Dr. Hemminger, who teaches.

155. Dr. Nelatury has the best research record compared to the three full Professors but has not yet been promoted.

156. Dr. Nelatury was treated less favorably than white colleagues of U.S. national origin.

157. Dr. Nelatury was not evaluated consistent with University regulations holding that promotions should be made on the basis of "relative merit."

158. Dr. Nelatury was treated less favorably on account of his race, color, and national origin.

159. Dr. Nelatury seeks all remedies and damages permitted under 42 U.S.C. § 1981, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and prejudgment and post-judgment interest.

COUNT III: RETALIATION
VIOLATION OF 42 U.S.C. § 1981
Plaintiff Sudarshan Nelatury v. All Defendants

160. The preceding paragraphs are incorporated as if set forth at length herein.

161. 42 U.S.C. § 1981 ensures the equal right of all individuals to make and enforce contracts regardless of race.

162. Individuals who complain of racial discrimination are protected from adverse employment action by 42 U.S.C. § 1981.

163. Dr. Nelatury engaged in activity protected by 42 U.S.C. § 1981 when he complained of the fact that he was subjected to racially discriminatory treatment.

164. The aforementioned complaints include both Dr. Nelatury's internal grievance and his administrative complaint/charge filed with the EEOC.

165. Dr. Nelatury further engaged in activity protected by 42 U.S.C. § 1981 when he

complained that his application for promotion was not being processed in accordance with internal University procedure.

166.    Dr. Nelatury was subjected to an adverse employment action in that his promotion application was not processed in a manner consistent with University regulations and in that his promotion dossier was not evaluated fairly.

167.    Dr. Nelatury was subjected to an adverse employment action in that he was not promoted in academic rank from Associate Professor to full Professor.

168.    Dr. Nelatury was subjected to adverse employment action on account of the fact that he had complained of racially discriminatory practices at Penn State.

169.    Dr. Nelatury was treated less favorably because he had complained of racially discriminatory practices at Penn State.

170.    Dr. Nelatury seeks all remedies and damages permitted under 42 U.S.C. § 1981, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

### COUNT IV: HOSTILE WORK ENVIRONMENT
### VIOLATION OF 42 U.S.C. § 1981
### Plaintiff Sudarshan Nelatury v. All Defendants

171.    The preceding paragraphs are incorporated as if set forth at length herein.

172.    42 U.S.C. § 1981 ensures the equal right of all individuals to make and enforce contracts regardless of race.

173.    Dr. Nelatury is of a non-Caucasian (white) individual of Indian national origin, and as such is a member of a class protected by 42 U.S.C. § 1981.

174.    Dr. Nelatury was assigned to immigration classifications(s) reserved for highly skilled

18

individuals.

175.    Dr. Nelatury was qualified for promotion at Penn State.

176.    Dr. Nelatury was subjected to an adverse employment action in that his promotion application was not processed in a manner consistent with University regulations and in that his promotion dossier was not evaluated fairly.

177.    Dr. Nelatury was subjected to an adverse employment action in that he was not promoted in academic rank from Associate Professor to full Professor.

178.    The aforementioned adverse actions experienced by Dr. Nelatury constitute discrimination on the basis of race/national origin.

179.    The aforementioned discrimination experienced by Dr. Nelatury was pervasive and regular.

180.    The aforementioned discrimination detrimentally affected Dr. Nelatury.

181.    The aforementioned discrimination would have detrimentally affected a reasonable person in Dr. Nelatury's position.

182.    Senior administrators at Penn State were aware of the aforementioned discrimination.

183.    Dr. Nelatury seeks all remedies and damages permitted under 42 U.S.C. § 1981, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

COUNT V: DISCRIMINATION ON THE BASIS OF RACE/NATIONAL ORIGIN
VIOLATION OF TITLE VII, 42 U.S.C. § 2000e et seq.
Plaintiff Sudarshan Nelatury v. Defendant Pennsylvania State University

184.    The preceding paragraphs are incorporated as if set forth at length herein.

185.    Dr. Nelatury is of Indian descent and national origin, and as such is a member of a

class protected by Title VII.

186.    Dr. Nelatury is an individual of Indian national origin, a person of color, and of non-U.S. national origin.

187.    Dr. Nelatury was assigned to immigration classifications(s) reserved for highly skilled individuals.

188.    Dr. Nelatury was qualified for promotion at Penn State.

189.    Dr. Nelatury was subjected to an adverse employment action in that his promotion application was not processed in a manner consistent with University regulations and in that his promotion dossier was not evaluated fairly.

190.    Dr. Nelatury was subjected to adverse employment action in that he was not promoted in academic rank from Associate Professor to full Professor.

191.    Dr. Nelatury's publication record is stronger than that of white faculty members of U.S. national origin who were promoted in the past.

192.    A non-Indian faculty member was promoted by Dr. Ford ahead of Dr. Nelatury, notwithstanding the fact that she had a lesser publication record and the fact that the college-level promotion committee advised that Dr. Nelatury be promoted ahead of her.

193.    The Electrical Engineering Program at Penn State–Behrend only has three full Professors, all of whom are white males; in contrast, the electrical engineering department at Penn State's campus in Harrisburg has six full professors, two Associate Professors, and is more diverse.

194.    Two of the three members of the Electrical Engineering Program faculty hold administrative positions and do not teach; therefore, there is only one full Professor, Dr. Hemminger, who teaches.

195.     Dr. Nelatury has the best research record compared to the three full Professors but has not yet been promoted.

196.     Dr. Nelatury was treated less favorably than white colleagues of U.S. national origin.

197.     Dr. Nelatury was not evaluated consistent with University regulations holding that promotions should be made on the basis of "relative merit."

198.     Dr. Nelatury was treated less favorably on account of his race, color, and national origin.

199.     Dr. Nelatury seeks all remedies and damages permitted under Title VII, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and prejudgment and post-judgment interest.

COUNT VI: RETALIATION
VIOLATION OF TITLE VII, 42 U.S.C. § 2000e et seq.
Plaintiff Sudarshan Nelatury v. Defendant Pennsylvania State University

200.     The preceding paragraphs are incorporated as if set forth at length herein.

201.     Individuals who complain of racial discrimination are protected from adverse employment action by Title VII.

202.     Dr. Nelatury engaged in activity protected by Title VII when he complained of the fact that he was subjected to racially discriminatory treatment.

203.     The aforementioned complaints include both Dr. Nelatury's internal grievance and his administrative complaint/charge filed with the EEOC.

204.     Dr. Nelatury further engaged in activity protected by Title VII when he complained that his application for promotion was not being processed in accordance with internal University procedure.

205.    Dr. Nelatury was subjected to an adverse employment action in that his promotion application was not processed in a manner consistent with University regulations and in that his promotion dossier was not evaluated fairly.

206.    Dr. Nelatury was subjected to an adverse employment action in that he was not promoted in academic rank from Associate Professor to full Professor.

207.    Dr. Nelatury was subjected to adverse employment action on account of the fact that he had complained of racially discriminatory practices at Penn State.

208.    Dr. Nelatury was treated less favorably because he had complained of racially discriminatory practices at Penn State.

209.    Dr. Nelatury seeks all remedies and damages permitted under Title VII, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

## COUNT VII: HOSTILE WORK ENVIRONMENT
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e et seq.
### Plaintiff Sudarshan Nelatury v. Defendant Pennsylvania State University

210.    The preceding paragraphs are incorporated as if set forth at length herein.

211.    Dr. Nelatury is of a non-Caucasian (white) individual of Indian national origin, and as such is a member of a class protected by Title VII.

212.    Dr. Nelatury was assigned to immigration classifications(s) reserved for highly skilled individuals.

213.    Dr. Nelatury was qualified for promotion at Penn State.

214.    Dr. Nelatury was subjected to an adverse employment action in that his promotion application was not processed in a manner consistent with University regulations and in that his

22

promotion dossier was not evaluated fairly.

215.    Dr. Nelatury was subjected to an adverse employment action in that he was not promoted in academic rank from Associate Professor to full Professor.

216.    The aforementioned adverse actions experienced by Dr. Nelatury constitute discrimination on the basis of race/national origin.

217.    The aforementioned discrimination experienced by Dr. Nelatury was pervasive and regular.

218.    The aforementioned discrimination detrimentally affected Dr. Nelatury.

219.    The aforementioned discrimination would have detrimentally affected a reasonable person in Dr. Nelatury's position.

220.    Senior administrators at Penn State were aware of the aforementioned discrimination.

221.    Dr. Nelatury seeks all remedies and damages permitted under Title VII, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

COUNT VIII: DISCRIMINATION ON THE BASIS OF AGE
VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621 et seq.
Plaintiff Sudarshan Nelatury v. Defendant Pennsylvania State University

222.    The preceding paragraphs are incorporated as if set forth at length herein.

223.    Dr. Nelatury is over forty years of age and, as such, is a member of a class protected by the Age Discrimination in Employment Act ("ADEA").

224.    Dr. Nelatury was qualified for promotion at Penn State.

225.    Dr. Nelatury was subjected to an adverse employment action in that his promotion

application was not processed in a manner consistent with University practice and in that his promotion dossier was not evaluated fairly.

226.    Dr. Nelatury was subjected to an adverse employment action in that he was not promoted in academic rank from Associate Professor to full Professor.

227.    Dr. Nelatury's publication record is stronger than that of younger faculty members who were promoted in the past.

228.    A significantly younger faculty member was promoted ahead of Dr. Nelatury despite having a lesser publication record.

229.    Dr. Nelatury was treated less favorably than his significantly younger colleagues.

230.    Dr. Nelatury was treated less favorably on account of his age.

231.    Dr. Nelatury seeks all remedies and damages permitted under the ADEA, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

COUNT IX: RETALIATION
VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C § 621 et seq.
Plaintiff Sudarshan Nelatury v. Defendant Pennsylvania State University

232.    The preceding paragraphs are incorporated as if set forth at length herein.

233.    Individuals who complain of age discrimination are protected from adverse employment action by the ADEA.

234.    Dr. Nelatury engaged in activity protected by the ADEA when he complained of the fact that he was subjected to ageist discriminatory treatment.

235.    The aforementioned complaints include both Dr. Nelatury's internal grievance and

24

his administrative complaint/charge filed with the EEOC.

236.    Dr. Nelatury further engaged in activity protected by the ADEA when he complained that his application for promotion was not being processed in accordance with internal University procedure.

237.    Dr. Nelatury was subjected to an adverse employment action in that his promotion application was not processed in a manner consistent with University regulations and in that his promotion dossier was not evaluated fairly.

238.    Dr. Nelatury was subjected to an adverse employment action in that he was not promoted in academic rank from Associate Professor to full Professor.

239.    Dr. Nelatury was subjected to an adverse employment action on account of the fact that he had complained of racially discriminatory practices at Penn State.

240.    Dr. Nelatury was treated less favorably because he had complained of ageist discriminatory practices at Penn State.

241.    Dr. Nelatury seeks all remedies and damages permitted under the ADEA including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

COUNT X:  HOSTILE WORK ENVIRONMENT
VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 621 et. seq.
Plaintiff Sudarshan Nelatury v. Defendant Pennsylvania State University

242.    The preceding paragraphs are incorporated as if set forth at length herein.

243.    Dr. Nelatury is over forty years of age and, as such, is a member of a class protected by the Age Discrimination in Employment Act ("ADEA").

244.     Dr. Nelatury was qualified for promotion at Penn State.

245.     Dr. Nelatury was assigned to immigration classifications(s) reserved for highly skilled individuals.

246.     Dr. Nelatury was subjected to an adverse employment action in that his promotion application was not processed in a manner consistent with University regulations and in that his promotion dossier was not evaluated fairly.

247.     Dr. Nelatury was subjected to an adverse employment action in that he was not promoted in academic rank from Associate Professor to full Professor.

248.     The aforementioned adverse actions experienced by Dr. Nelatury constitute discrimination on the basis of age.

249.     The aforementioned discrimination experienced by Dr. Nelatury was pervasive and regular.

250.     The aforementioned discrimination detrimentally affected Dr. Nelatury.

251.     The aforementioned discrimination would have detrimentally affected a reasonable person in Dr. Nelatury's position.

252.     Senior administrators at Penn State were aware of the aforementioned discrimination.

253.     Dr. Nelatury seeks all remedies and damages permitted under the ADEA, including, but not limited to, back pay, front pay, emotional distress, medical harm, and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

COUNT XI: DISCRIMINATION ON THE BASIS OF SEX
VIOLATION OF TITLE IX, 20 U.S.C. § 1681 et seq.
Plaintiff Sudarshan Nelatury v. Defendant Pennsylvania State University

254.     The preceding paragraphs are incorporated as if set forth at length herein.

255.   Title IX prohibits federally-funded educational institutions from discriminating on the basis of sex.

256.   Penn State is a federally funded educational institution.

257.   Dr. Nelatury is a male and, as such, is a member of a class protected by Title IX.

258.   Dr. Nelatury was qualified for promotion at Penn State.

259.   Dr. Nelatury was assigned to immigration classifications(s) reserved for highly skilled individuals.

260.   Dr. Nelatury was subjected to an adverse employment action in that his promotion application was not processed in a manner consistent with University regulations and in that his promotion dossier was not evaluated fairly.

261.   Dr. Nelatury was subjected to an adverse employment action in that he was not promoted in academic rank from Associate Professor to full Professor.

262.   Dr. Nelatury's publication record is stronger than that of a female faculty member who had a promotion review in the same academic year as Dr. Nelatury; this faculty member was promoted ahead of Dr. Nelatury.

263.   Dr. Nelatury was treated less favorably than his significantly younger colleagues.

264.   Dr. Nelatury was treated less favorably on account of his sex.

265.   Dr. Nelatury complained of the discriminatory treatment to Penn State administrators who could have rectified the situation.

266.   Dr. Nelatury seeks all remedies and damages permitted under Title IX, including, but not limited to, back pay, front pay, emotional distress, medical harm, and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

COUNT XII: RETALIATION
VIOLATION OF TITLE IX, 20 U.S.C. § 1681 et seq.
Plaintiff Sudarshan Nelatury v. Defendant Pennsylvania State University

267.    The preceding paragraphs are incorporated as if set forth at length herein.

268.    Title IX prohibits federally-funded educational institutions from taking retaliatory actions against employees or students who complain of sex discrimination.

269.    Penn State is a federally funded educational institution.

270.    Title IX protects individuals who complain of sex discrimination from adverse employment action.

271.    Dr. Nelatury engaged in activity protected by Title IX when he complained of the fact that he was subjected to sexist discriminatory treatment.

272.    The aforementioned complaints include both Dr. Nelatury's internal grievance and his administrative complaint/charge filed with the EEOC.

273.    Dr. Nelatury further engaged in activity protected by Title IX when he complained that his application for promotion was not being processed in accordance with internal University procedure.

274.    Dr. Nelatury was subjected to an adverse employment action in that his promotion application was not processed in a manner consistent with University regulations and in that his promotion dossier was not evaluated fairly.

275.    Dr. Nelatury was subjected to an adverse employment action in that he was not promoted in academic rank from Associate Professor to full Professor.

276.    Dr. Nelatury was subjected to an adverse employment action on account of the fact that he had complained of racially discriminatory practices at Penn State.

277.    Dr. Nelatury was treated less favorably because he had complained of sexist discriminatory practices at Penn State.

278.    Dr. Nelatury seeks all remedies and damages permitted under Title IX including, but not limited to, back pay, front pay, emotional distress, medical harm, and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

COUNT XIII: HOSTILE WORK ENVIRONMENT
VIOLATION OF TITLE IX, 20 U.S.C. § 1681 et seq.
Plaintiff Sudarshan Nelatury v. Defendant Pennsylvania State University

279.    The preceding paragraphs are incorporated as if set forth at length herein.

280.    Title IX prohibits federally funded educational institutions form subjecting employees or students from a hostile work environment predicated on sex or gender.

281.    Penn State is a federally funded educational institution.

282.    Dr. Nelatury is a male and, as such, is a member of a class protected by Title IX.

283.    Dr. Nelatury was qualified for promotion at Penn State.

284.    Dr. Nelatury was assigned to immigration classifications(s) reserved for highly skilled individuals.

285.    Dr. Nelatury was subjected to an adverse employment action in that his promotion application was not processed in a manner consistent with University regulations and in that his promotion dossier was not evaluated fairly.

286.    Dr. Nelatury was subjected to an adverse employment action in that he was not promoted in academic rank from Associate Professor to full Professor.

287.    The aforementioned adverse actions experienced by Dr. Nelatury constitute discrimination on the basis of sex.

288.    The aforementioned discrimination experienced by Dr. Nelatury was pervasive and regular.

289.    The aforementioned discrimination detrimentally affected Dr. Nelatury.

290.    The aforementioned discrimination would have detrimentally affected a reasonable person in Dr. Nelatury's position.

291.    Senior administrators at Penn State were aware of the aforementioned discrimination.

292.    Dr. Nelatury seeks all remedies and damages permitted under Title IX, including, but not limited to, back pay, front pay, emotional distress, medical harm, and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

COUNT XIV: DISCRIMINATION ON THE BASIS OF SEX
VIOLATION OF TITLE VII, 42 U.S.C. § 2000e et seq.
Plaintiff Sudarshan Nelatury v. Defendant Pennsylvania State University

293.    The preceding paragraphs are incorporated as if set forth at length herein.

294.    Dr. Nelatury is a male and, as such, is a member of a class protected by Title VII.

295.    Dr. Nelatury was qualified for promotion at Penn State.

296.    Dr. Nelatury was assigned to immigration classifications(s) reserved for highly skilled individuals.

297.    Dr. Nelatury was subjected to an adverse employment action in that his promotion application was not processed in a manner consistent with University regulations and in that his promotion dossier was not evaluated fairly.

298.    Dr. Nelatury was subjected to an adverse employment action in that he was not promoted in academic rank from Associate Professor to full Professor.

299.    Dr. Nelatury's publication record is stronger than that of a female faculty member

who had a promotion review in the same academic year as Dr. Nelatury; this faculty member was promoted ahead of Dr. Nelatury.

300.    Dr. Nelatury was treated less favorably than his significantly younger colleagues.

301.    Dr. Nelatury was treated less favorably on account of his sex.

302.    Dr. Nelatury seeks all remedies and damages permitted under Title VII, including, but not limited to, back pay, front pay, emotional distress, medical harm, and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

## COUNT XV: RETALIATION
VIOLATION OF TITLE VII, 42 U.S.C. § 2000e et seq.
Plaintiff Sudarshan Nelatury v. Defendant Pennsylvania State University

303.    The preceding paragraphs are incorporated as if set forth at length herein.

304.    Title VII protects individuals who complain of sex discrimination from adverse employment action.

305.    Dr. Nelatury engaged in activity protected by Title VII when he complained of the fact that he was subjected to sexist discriminatory treatment.

306.    The aforementioned complaints include both Dr. Nelatury's internal grievance and his administrative complaint/charge filed with the EEOC.

307.    Dr. Nelatury further engaged in activity protected by Title VII when he complained that his application for promotion was not being processed in accordance with internal University procedure.

308.    Dr. Nelatury was subjected to an adverse employment action in that his promotion application was not processed in a manner consistent with University regulations and in that his promotion dossier was not evaluated fairly.

309.     Dr. Nelatury was subjected to an adverse employment action in that he was not promoted in academic rank from Associate Professor to full Professor.

310.     Dr. Nelatury was subjected to an adverse employment action on account of the fact that he had complained of racially discriminatory practices at Penn State.

311.     Dr. Nelatury was treated less favorably because he had complained of sexist discriminatory practices at Penn State.

312.     Dr. Nelatury seeks all remedies and damages permitted under Title VII including, but not limited to, back pay, front pay, emotional distress, medical harm, and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

COUNT XVI: HOSTILE WORK ENVIRONMENT
VIOLATION OF TITLE VII, 42 U.S.C. § 2000e et. seq.
Plaintiff Sudarshan Nelatury v. Defendant Pennsylvania State University

313.     The preceding paragraphs are incorporated as if set forth at length herein.

314.     Dr. Nelatury is a male and, as such, is a member of a class protected by Title VII.

315.     Dr. Nelatury was qualified for promotion at Penn State.

316.     Dr. Nelatury was assigned to immigration classifications(s) reserved for highly skilled individuals.

317.     Dr. Nelatury was subjected to an adverse employment action in that his promotion application was not processed in a manner consistent with University regulations and in that his promotion dossier was not evaluated fairly.

318.     Dr. Nelatury was subjected to an adverse employment action in that he was not promoted in academic rank from Associate Professor to full Professor.

319.     The aforementioned adverse actions experienced by Dr. Nelatury constitute

32

discrimination on the basis of sex.

320.    The aforementioned discrimination experienced by Dr. Nelatury was pervasive and regular.

321.    The aforementioned discrimination detrimentally affected Dr. Nelatury.

322.    The aforementioned discrimination would have detrimentally affected a reasonable person in Dr. Nelatury's position.

323.    Senior administrators at Penn State were aware of the aforementioned discrimination.

324.    Dr. Nelatury seeks all remedies and damages permitted under Title VII, including, but not limited to, back pay, front pay, emotional distress, medical harm, and reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

### COUNT XVII: BREACH OF CONTRACT
### VIOLATION OF PENNSYLVANIA COMMON LAW
Plaintiff Sudarshan Nelatury v. Defendant Pennsylvania State University

325.    The preceding paragraphs are incorporated as if set forth at length herein.

326.    In order to state a claim for breach of contract under Pennsylvania law, a plaintiff must first plead the existence of a contract (including its essential terms), a breach of the contract on the part of the defendant, and resultant damages.

327.    Under Pennsylvania law, employer policies and employee handbooks may give rise to a contract between the employee and the employer.

328.    Within the Penn State system, the procedures regarding tenure and promotion are set forth in a series of university practices and procedures.

329.    The University was in breach of the aforementioned contract when, *inter alia*, Penn State:

    a.       Failed to afford equal treatment to the open access publications authored by Dr. Nelatury as it would to traditionally-published peer reviewed publications;

    b.       Failed to forward his dossier to review by the University-wide committee after Dr. Ford and the college ad hoc committee expressed their differences regarding his dossier;

    c.       Disregarded Dr. Nelatury's extensive publication record in traditional-format publications; and

    d.       Disregarded Dr. Nelatury's record of Unviersity service.

330.    Dr. Nelatury suffered damages as a result of Penn State's breach.

331.    Dr. Nelatury seeks all damages available under Pennsylvania law for breach of contract.

## COUNT XVIII: BREACH OF CONTRACT
### VIOLATION OF PENNSYLVANIA COMMON LAW
Plaintiff Sudarshan Nelatury v. Defendant Pennsylvania State University

332.    The preceding paragraphs are incorporated as if set forth at length herein.

333.    In order to state a claim for breach of contract under Pennsylvania law, a plaintiff must first plead the existence of a contract (including its essential terms), a breach of the contract on the part of the defendant, and resultant damages.

334.    Under Pennsylvania law, an internal employee handbook and/or employer policies may give rise to a binding contract between an employer and an employee.

335.    At Penn State, the process for promotion in academic rank is governed by a series of internal procedures that have been approved by the faculty and administration.

336.    These internal procedures are uniformly applicable to all faculty members throughout the Penn State system.

337.    A promotion in academic rank would have led to an increase in salary

338.    During the 2018-19 academic year, Dr. Nelatury prepared his promotion dossier in accordance with the aforementioned procedures.

339.    Dr. Nelatury also relied on the aforementioned procedures when he requested that Drs. Pinto, Hemminger, and Parente be named to the initial ad hoc review committee.

340.    However, Dr. Ford–acting within the scope of his employment as a Penn State administrator–rejected the three pre-approved members of the ad hoc committee and appointed his own committee members.

341.    Dr. Ford also did not allow Dr. Nelatury to supplement his promotion dossier.

342.    Dr. Ford's review of Dr. Nelatury's promotion dossier was contrary to Penn State's procedures regarding promotion.

343.    Upon review of his petition, the FRRC found that Dr. Ford's review of Dr. Nelatury's promotion application violated Penn State policy, and allowed for Dr. Nelatury to resubmit his employment application.

344.    The findings of the FRRC indicate that Penn State–acting through Dr. Ford, its agent–had breached the contract with Dr. Nelatury as set forth in its internal promotion procedures.

345.    Even though he was allowed to resubmit his application for promotion, the fact that he was not promoted during the 2018-19 academic year led to Dr. Nelatury suffering economic damages in the form of a deferred/lost increase in salary.

346.    Dr. Nelatury seeks all damages available under Pennsylvania law for breach of

contract.

COUNT XIX BREACH OF CONTRACT
VIOLATION OF PENNSYLVANIA COMMON LAW
Plaintiff Sudarshan Nelatury v. Defendant Pennsylvania State University

347.    The preceding paragraphs are incorporated as if set forth at length herein.

348.    In order to state a claim for breach of contract under Pennsylvania law, a plaintiff must first plead the existence of a contract (including its essential terms), a breach of the contract on the part of the defendant, and resultant damages.

349.    Under Pennsylvania law, an internal employee handbook and/or employer policies may give rise to a binding contract between an employer and an employee.

350.    At Penn State, the process for promotion in academic rank is governed by a series of internal procedures that have been approved by the faculty and administration.

351.    Numerous times Dr. Nelatury received SRTEs greater than 6.0 on a scale of 7.0.  For instance, in Fall 2019 his scores in three courses were 6.62, 6.54, 6.4 out of 7.   Rarely he received lower scores in low-level courses, but faulting teaching based on these outliers to the total exclusion of his exemplary high numbers shows pretext.

352.    Per University policy, student reviews of teaching effectiveness (SRTEs) must be viewed along with peer-reviews of faculty members for promotion and tenure.

353.    Acting within the scope of their employment, Dr. Ford and Dr. Kurzweg failed to adhere to University policy by not considering Dr. Nelatury's peer-review report.

354.    Dr. Nelatury had been ranked as "excellent" in his peer-review report.

355.    Dr. Nelatury was assigned to immigration classifications(s) reserved for highly skilled individuals.

36

356.    Dr. Ford also failed to adhere to University policy or to the spirit of University policy when he failed to

   a)    Set forth the particulars of his discussion with the college-wide ad hoc committee regarding the divergence of opinion with respect recommending Dr. Nelatury for promotion; and

   b)    Forward Dr. Nelatury's dossier to the University-wide ad hoc committee for review.

357.    The failures of Dr. Ford and Dr. Kurzweg to adhere to university policy led to Dr. Nelatury being denied promotion.

358.    The fact that he was not promoted led to Dr. Nelatury being denied an increase in salary; this, in turn, led to him suffering economic damages.

359.    Dr. Nelatury seeks all damages available under Pennsylvania law for breach of contract.

Respectfully Submitted,

LIEBER HAMMER HUBER & PAUL, P.C.


s/James B. Lieber
James B. Lieber
Pa. I.D. No. 21748
Thomas M. Huber
Pa. I.D. No. 83053
Jacob M. Simon
Pa. I.D. No. 202610
1722 Murray Avenue, 2nd Floor
Pittsburgh, PA 15217
(412) 687-2231 (telephone)
(412) 687-3140 (fax)